Marilyn Heiken, OSB #923308
mheiken@justicelawyers.com
**JOHNSON JOHNSON LUCAS & MIDDLESTON, PC**
975 Oak Street, Suite 1050
Eugene, OR 97401
Telephone: (541) 484-2434
Facsimile: (541) 484-0882

*Attorneys for Plaintiffs and the Proposed Class*
*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BETHANY ANDERSON and CHRIS DAVIS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VGW HOLDINGS US, INC., VGW US, INC., VGW LUCKYLAND, INC., VGW GP LTD., VGW HOLDINGS PTY LTD. f/k/a VGW HOLDINGS LTD., and VGW GAMES LTD.,<br><br>Defendants. | Case No. 6:26-cv-00109<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. DECLARATORY JUDGMENT;**<br>**2. VIOLATION OF OREGON GAMBLING LOSS RECOVERY STATUTE (ORS 30.740, *et seq.*); and**<br>**3. VIOLATION OF OREGON UNLAWFUL TRADE PRACTICES ACT (ORS 646.605, *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Bethany Anderson and Chris Davis, individually and on behalf of the other members of the class defined below (the "Class"), hereby allege against Defendant VGW Holdings US, Inc., VGW US, Inc., VGW Luckyland, Inc., VGW GP Ltd., VGW Holdings Pty Ltd. f/k/a VGW Holdings Ltd., and VGW Games Ltd. (collectively, "VGW" or "Defendant"), upon personal

knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## NATURE OF THE ACTION

1. VGW owns and operates LuckyLandSlots.com and GlobalPoker.com (the "Casino Websites"). Through the Casino Websites, VGW offers Oregon residents the chance to gamble for real cash. Players pay real money to obtain "Gold Coins" and cash-redeemable "Sweeps Coins," then wager Sweeps Coins on slots, roulette, blackjack, poker, and other games of chance for the opportunity to win additional Sweeps Coins redeemable for cash. In substance, it is simple: pay money → get Sweeps Coins → gamble → cash out.

2. VGW structures the Casino Websites this way to evade Oregon's gambling laws through a contrived two-coin "sweepstakes" technicality. VGW claims players buy "Gold Coins," with "Sweeps Coins" for "free"—a posture aimed at regulators, not consumers—even though Gold Coins are worthless play money and Sweeps Coins are the real wagering currency used to gamble for cash. VGW's "sweepstakes" framing and nominal free-entry mechanisms are pretextual and commercially illusory in practice, designed to manufacture a superficial claim that consumers are not paying for the chance to win cash even though the platform operates as a real-money casino. In substance and effect, VGW's Casino Websites constitute an unlicensed online gambling operation that is unlawful in Oregon and violates Oregon's gambling and consumer protection laws. Plaintiffs bring this action under, among other laws, Oregon's Gambling Loss Recovery Statute, which allows losing gamblers to recover twice their losses.

3. This lawsuit is brought by Plaintiff and a class of all persons who, while located in Oregon, paid money or other things of value to participate on www.Luckylandslots.com or www.Globalpoker.com (the "Class"). They seek damages and declaratory, injunctive, and equitable relief.

4. Gambling is heavily regulated in Oregon and unless the legislature specifically authorizes it, gambling is unlawful. *See* ORS 167.108, *et seq.*; ORS 167.117(24) ("unlawful" means "not specifically authorized by law"). VGW's Casino Websites do not promote any external

product or service; the gambling itself *is* the product. VGW's gambling scheme operates continuously and indefinitely, offering no legitimate business purpose apart from wagering for prizes.

5. Because VGW requires participants to risk money or other things of value for a chance to win a prize, its Casino Websites constitute an illegal gambling operation under Oregon law.

6. Plaintiffs and Class members each wagered and spent money or other things of value on VGW's Casino Websites. In addition, VGW engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Oregon, including representing and causing Plaintiffs and Class members to believe VGW's Casino Websites were legal, approved or regulated by the State of Oregon when, in fact, they operate as illegal gambling in violation of Oregon law.

## THE PARTIES

***Plaintiffs***

7. Plaintiff Bethany Anderson is domiciled in Oregon and resides in Marion County. While physically located in Oregon, Plaintiff paid money to play VGW's online casino-style games of chance on Luckylandslots.com, and as a result wagered and lost money. Plaintiff did not know that Luckylandslots.com operated as an illegal gambling operation under Oregon law. VGW's advertising and representations led Plaintiff to believe that participation on Luckylandslots.com was lawful in Oregon, and VGW failed to disclose that it was not. Had Plaintiff known the truth, she would not have participated and would not have lost money. Plaintiff's losses occurred on multiple occasions within the applicable statute of limitations, while she was physically located in Oregon.

8. Plaintiff Chris Davis is domiciled in Oregon and resides in Clackamas County. While physically located in Oregon, Plaintiff paid money to play VGW's online casino-style games of chance on globalpoker.com, and as a result wagered and lost money. Plaintiff did not know that globalpoker.com operated as an illegal gambling operation under Oregon law. VGW's

advertising and representations led Plaintiff to believe that participation on globalpoker.com was lawful in Oregon, and VGW failed to disclose that it was not. Had Plaintiff known the truth, he would not have participated and would not have lost money. Plaintiff's losses occurred on multiple occasions within the applicable statute of limitations, while he was physically located in Oregon.

***Defendants***

9. Defendant VGW Holdings US Inc. ("VGW Holdings US") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302. During the relevant time period, the principal place of business and headquarters of VGW Holdings US has also been at 442 Post Street, Suite 900, San Francisco, CA 94102 (the same location as the principal place of business for VGW US Inc. and VGW Luckyland Inc.). VGW Holdings US owns and operates a series of wholly owned subsidiaries, including VGW US, Inc. and VGW Luckyland, Inc. (which owns LuckyLand Slots). VGW Holdings US controls the illegal gambling operations of these wholly owned subsidiaries under the ultimate direction of VGW Holdings Limited.

10. Defendant VGW US Inc. ("VGW US") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302. During the relevant time period, the principal place of business and headquarters of VGW US has also been at 442 Post Street, Suite 900, San Francisco, CA 94102 (the same location as the principal place of business for VGW Holdings US Inc. and VGW Luckyland Inc.). VGW US has admitted in court filings that it "provides treasury and payment services" necessary to run the websites, and is therefore involved in their operation.

11. Defendant VGW Luckyland Inc. ("VGW Luckyland") is a Delaware corporation with its principal place of business in Delaware. During the relevant time period, the principal place of business and headquarters of VGW Luckyland has also been at 442 Post Street, Suite 900, San Francisco, CA 94102 (the same location as the principal place of business for VGW Holdings US, Inc. and VGW US, Inc.). VGW Luckyland develops, markets, owns and operates the Luckyland Slots online casino gambling games, which it makes accessible to users online at the

website Luckylandslots.com. During the relevant time period, VGW Luckyland has owned and operated the website Luckylandslots.com. VGW Luckyland itself, or one of the agents it appoints, also processes the gambling wagers and payments made or won by participants, including Plaintiffs and other Class members, on the Luckyland Slots platform.

12. Defendant VGW GP Limited ("VGW GP") is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 BIRKIRKARA, CBD2010, Malta. VGW GP develops, markets, owns and operates the Global Poker online casino gambling games, which it makes accessible to users online at the website Globalpoker.com. VGW GP owns and operates the website GlobalPoker.com. VGW GP itself, or one of the agents it appoints, also processes the gambling wagers and payments made or won by participants, including Plaintiffs and other Class members, on the Global Poker platform.

13. Defendant VGW Holdings Pty Ltd. f/k/a VGW Holdings, Ltd. ("VGW Holdings") is an Australian corporation with its principal place of business in Perth, Australia. VGW Holdings is the ultimate parent of defendants VGW Holdings US, VGW US, VGW Luckyland, VGW GP, and VGW Games, and has publicly stated, without qualification, that it "exercises control" over each of the co-Defendants in this case and has a 100% ownership interest in them. VGW Holdings has also publicly stated in court filings that it "specialize[s] in the development and publication of … online casino-themed social games on platforms called *Luckyland Slots* …and *Global Poker.*"

14. Defendant VGW Games Ltd. ("VGW Games") is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 BIRKIRKARA, CBD2010, MaltaVGW Games co-operates the Global Poker website by managing the sweepstakes promotions and cash winnings generated on the website.

15. Through the operation and promotion of their Casino Websites and their affiliate offices in the US, each VGW Defendant conducts business in Oregon.

## JURISDICTION AND VENUE

16. This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(d) because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs, and because Plaintiffs and one or more of the other Class members are citizens of a different state than VGW.

17. Venue is proper in this District under 28 U.S.C. § 1391 because VGW is deemed to reside in any judicial district in which it is subject to personal jurisdiction. A substantial part of the events or omissions giving rise to the claim occurred within this District. Plaintiffs wagered and lost money on VGW in this District, and VGW has marketed and advertised its Websites in this District, made its Websites accessible in this District, accepted wagers in this District, and paid out prizes in this District.

18. This Court has personal jurisdiction over VGW because VGW has systematically and continually conducted, and continues to conduct, business in Oregon, and this lawsuit arises out of those contacts with Oregon.

19. At all relevant times, VGW has systematically and continuously conducted business in Oregon through the operation of the interactive, commercial Casino Websites that allow Oregon residents to wager money and win prizes.

20. VGW specifically intended and foresaw that Oregon residents would access and gamble on its Casino Websites at issue.

21. VGW knew that Oregon residents use its Casino Websites at issue because it requires users to disclose their state of resident when registering.

22. VGW further encouraged gambling by Oregon residents by failing to list Oregon as an excluded territory on its Casino Websites. VGW also encouraged gambling by Oregon residents by advertising to Oregon residents in Oregon, including sending promotional and account-related emails to Oregon residents. In other words, VGW reached into Oregon and invited Oregon residents to become customers by participating on its Casino Websites.

23. VGW further requires players to confirm their identity and residential address through government-issued identification and proof-of-address documentation, and to verify a

bank account in order to redeem their wagered and won Sweeps Coins for cash prizes—confirming that VGW knowingly transacts with Oregon residents and maintains financial redemption relationships with them.

24. VGW profits substantially from Oregon residents, who constitute a significant portion of its customer base and revenue.

25. VGW also collects and maintains personal and transactional data from Oregon users.

26. VGW affirmatively ensured that Oregon residents would have access to the Casino Websites at issue so that they could gamble online from within Oregon. Widely available geolocation technology allows online platforms to detect a website visitor's location—including the state in which they are located—and restrict access where gambling is illegal, such as in Oregon. VGW utilizes that technology for other states, but deliberately chose not to use that technology for preventing Oregon residents from accessing and participating on its Casino Websites at issue, thereby maximizing its gambling profits from this State.

## FACTUAL BACKGROUND

### I. The Problem of Unlicensed Online Gambling

27. Gambling is heavily regulated in Oregon and is unlawful unless specifically authorized by the Legislature. Oregon's Constitution and gambling statutes reflect a strong public policy against unregulated gambling in all forms. Unregulated online gambling also raises heightened consumer-protection concerns, including the risk of excessive or compulsive play and resulting financial harm, which Oregon addresses by restricting gambling to authorized and regulated forms.

28. Authorized gambling in Oregon is limited to regulated channels and subject to safeguards designed to ensure integrity, prevent fraud, and protect the public. Unlicensed gambling operations bypass those safeguards while still inviting consumers to wager money or other things of value for the chance to win prizes.

29. Online casino-style games such as slots, roulette, blackjack, and poker are unlawful in Oregon unless specifically authorized by law.

30. Rather than operating as a legitimate promotional sweepstakes for an independent good or service, VGW operates www.LuckyLandSlots.com and www.GlobalPoker.com as continuous, casino-style gambling platforms. Through its Casino Websites, VGW enables Oregon residents to pay money to obtain cash-redeemable wagering currency, wager it on games of chance, and redeem winnings for cash.

31. VGW's Casino Websites therefore function as unlicensed online gambling operations in Oregon, violating Oregon's gambling laws and consumer protection laws.

## II. VGW's Unlicensed and Unlawful Gambling Websites

32. VGW's Casino Websites are among the largest online casino platforms in the United States. In November 2025, Luckylandslots.com and Globalpoker.com ranked #14 (U.S. Casinos) and #1 (U.S. Poker), respectively, in Similarweb's U.S. gambling category rankings.

33. VGW offers casino-style "Chance Games" whose outcomes are determined by randomness rather than skill. As VGW explains, "All outcomes are random."[1] VGW further explains that "A Random Number Generator (RNG) is used in all LuckyLand Slots games," where "an algorithm generates number sequences that are unpredictable, non-repeatable, and uniformly distributed."[2] Players use Sweepstakes Coins (also called "Sweeps Coins") to enter games for the chance to win additional Sweeps Coins that are redeemable for prizes, including cash. According

---

[1] *See* LuckyLand Slots, *Responsible Social Gameplay Policy*, available at https://luckylandslots.com/responsible-social-gameplay (last visited Dec. 29, 2025); Global Poker, *Responsible Social Gameplay Policy*, available at https://media.globalpoker.com/vgwholdings89e8-vgw-prod-817c/media/251124-POL-RSG-POK-5-0.pdf (last visited Dec. 29, 2025).

[2] *See* LuckyLand Slots, *Responsible Social Gameplay Policy*, available at https://luckylandslots.com/responsible-social-gameplay (last visited Dec. 29, 2025). VGW makes the same admission with respect to all games available at GlobalPoker.com: "All outcomes are random" and "The Random Number Generator (RNG) used in all Global Poker games has been independently certified by iTechLabs and Gaming Associates, who confirmed that the RNG uses a well-known algorithm to generate random numbers…[which] are unpredictable, non-repeatable, and uniformly distributed." *See* Global Poker, *Responsible Social Gameplay Policy*, available at https://media.globalpoker.com/vgwholdings89e8-vgw-prod-817c/media/251124-POL-RSG-POK-5-0.pdf (last visited Dec. 29, 2025).

to VGW, "all Sweeps Coins you want to redeem have to be already used to participate in our Promotional Play," meaning that the player has "used them to enter our Games and … won," and that players may redeem their prize as a "Cash Prize" by redeeming "your Sweeps Coins winnings to your bank account or Skrill wallet."[3] The LuckyLand Slots platform allows players to win and redeem cash prizes with real-world monetary value. VGW represents that "[t]hrough our patented Sweepstakes technology, players can legally redeem their winnings online," and that "[c]ash prize redemptions are sent via secure Electronic Funds Transfer (EFT) directly to your bank."[4] Through these admissions, VGW acknowledges that the outcomes of its games are determined by chance rather than skill, and that its casino game platforms allows users to wager for the opportunity to win prizes of real-world monetary value, including cash.

---

[3] *See* LuckyLand Slots, *How do I redeem a prize for cash?*, available at https://help.luckylandslots.com/article/LLS-How-do-I-redeem-a-prize-for-cash (last visited Dec. 29, 2025); Global Poker, How do I redeem a prize for cash?, available at https://help.globalpoker.com/article/How-do-I-redeem-a-prize-for-cash (last visited Dec. 29, 2025). Skrill is a third-party digital payment wallet that allows users to receive and transfer funds and withdraw money to a bank account.

[4] *See* LuckyLand Slots, The LuckyLand Slots Difference!, available at https://luckylandslots.com/cash-prizes (last visited Dec. 29, 2025).

34. When users log onto the LuckyLand Slots website, the first thing they see is an array of colorful, digital slot machines and other games of chance, including Vegas-style table games including craps and blackjack. Near the top of the screen, the Casino Website displays the user's gambling balance, denoted by gold and green bars—signifying real monetary value within the platform:






35. Just like one would see on the floor of a brick-and-mortar casino in Las Vegas, the digital slot machines available at the LuckyLand Slots platform come in a wide variety of styles and themes, such as the examples shown below. These games use the same mechanics, pay-line structures, and psychological triggers—including lights, sounds, and intermittent reward patterns—that are scientifically recognized to reinforce compulsive gambling behavior. VGW markets these features with the same appeal and excitement associated with casino gaming:






36. Just as with LuckyLand Slots, when users log onto the Global Poker website, the first thing they see is an array of colorful, digital slot machines, Vegas-style table games including craps and blackjack, and other games of chance, along with information about the user's gambling balance near the top of the screen (denoted with the gold bar near the top right corner):







POKER
CASINO
Blackjack Classic
Get Coins
DEALER HITS ON SOFT 17
BLACKJACK AWARDS 3 to 2
0 SC
INSURANCE AWARDS 2 TO 1
Clear
Re-play
Play
50
500
0.5
5


POKER
CASINO
Craps
Get Coins
PASS LINE
DON'T PASS BAR
Don't Come Bar
4
5
SIX
8
NINE
10
COME
Field
DON'T PASS BAR
PASS LINE
PASS LINE ODDS
SEVEN 5 FOR 1
HORN PLAY
ANY CRAPS 8 FOR 1
HARD WAYS
ONE ROLL PLAYS
MENU
COINS IN PLAY
SC0.00
CLEAR
UNDO
ROLL
WIN

37. As with the LuckyLand Slots platform—and identical to the slot machines in a Las Vegas brick-and-mortar casino—the digital slot machines available on the Global Poker platform come in a wide variety of slot machine styles and themes, such as the examples shown below. These Global Poker slot machine games use the same mechanics, pay-line structures, and psychological triggers—including lights, sounds, and intermittent reward patterns—that are scientifically recognized to reinforce compulsive gambling behavior. VGW markets these features with the same appeal and excitement associated with casino gaming. Pictured below are representative examples—screenshots from GlobalPoker.com of the "Lucky Land 7's" and "Viva Frost Vegas" slot machine games:






38. As the platform's name suggests and implies to reasonable consumers, in addition to slot machines and table games (e.g., craps and blackjack), GlobalPoker.com also provides numerous traditional casino card games, including Texas hold'em and other poker games, as shown below.






39. Through GlobalPoker.com, users can participate in a variety of card games and gamble against other players in real time, mirroring the experience found in a traditional brick-and-mortar casino. Players can join tables for poker games like Texas hold'em, compete head-to-head, and place bets just as they would at a physical casino.

40. On its website, GlobalPoker.com states "[w]innings from Sweeps Coins can be redeemed for real prizes!"

41. VGW's Global Poker website offers "live" table games that are deliberately designed to replicate the experience of gambling in a Las Vegas casino. VGW markets these games by telling players, "Vegas might have the lights, but we've got the better seat—your sofa," and "Think Vegas straight to your screen, minus the sticky carpets and overpriced cocktails."[5] Through

---

5 *See* https://globalpoker.com/casino-games/social-live-casino (last visited Dec. 29, 2025).

the website, players place wagers on games of chance—such as blackjack and roulette—while interacting in real time with live dealers visible via webcam. The look, feel, mechanics, and gameplay of these "live" games mirror traditional casino table games, differing only in that they are accessed through a web browser rather than on a casino floor.




42. At times the Casino Websites describe their games as "sweepstakes." But they function nothing like a legal sweepstakes promotion. Traditional sweepstakes promotions are short-term marketing events intended to draw consumer interest toward purchasing some other product or service. In contrast, VGW's so-called "sweepstakes" runs indefinitely and exists solely to generate revenue from gambling. It is common for individual users in Oregon to lose tens of

thousands of dollars gambling on VGW's Casino Websites. The Casino Websites' gambling operation is not incidental to another business, it is the business being promoted.

43. Multiple state gaming regulators have issued cease-and-desist orders or directives to VGW regarding its operation of casino-style "sweepstakes" websites, concluding that VGW is offering unlicensed online gambling in violation of those states' laws. In January 2024, the Michigan Gaming Control Board announced that it sent cease-and-desist letters to several internet gaming companies, including VGW Luckyland, because they were conducting "illegal gambling" by offering "an internet game in which a player wagers something of monetary value for the opportunity to win something of monetary value." The Board's Executive Director explained that "[g]ambling regulations are in place for a reason" and that illegal operators leave citizens vulnerable because they are "playing on unregulated sites."[6] Likewise, in April 2025, the Delaware Division of Gaming Enforcement announced that it shut down LuckyLand Slots as an "illegal online slot[]" operator and stated that its investigation revealed VGW Luckyland was operating illegal online gaming and misrepresenting its services as a sweepstakes while enabling players to purchase coins for casino-style games leading to potential cash winnings. Delaware officials emphasized that, unlike regulated casinos, "these illegal platforms don't follow any oversight or

---

[6] *See* Michigan Gaming Control Board, *Michigan Gaming Control Board sends cease-and-desist letters to US, international internet gaming companies due to illegal operations* (January 18, 2024), available at https://www.michigan.gov/mgcb/news/2024/01/18/mgcb-sends-cease-and-desist-letters.

consumer protection rules."[7] In addition, regulators in Louisiana[8], Mississippi[9], Maryland[10], Connecticut[11], and New York[12] have issued enforcement actions or public directives requiring VGW or its affiliated platforms—including LuckyLand Slots and Global Poker—to cease offering these casino-style gambling websites to residents of those states. VGW's Casino Websites are likewise unlawful in Oregon, yet VGW continues to operate in Oregon while misrepresenting that its platforms are legal and compliant.

44. VGW's receipt of repeated cease-and-desist directives and public enforcement actions demonstrates that VGW has long been on notice that regulators view its sweepstakes casino model as unlawful gambling.

---

7 *See* Delaware Division of Gaming Enforcement, *Delaware shuts down illegal online slots* (April 7, 2025), available at https://news.delaware.gov/2025/04/07/delaware-shuts-down-illegal-online-slots/.

8 *See* Louisiana Gaming Control Board, *Illegal Operators*, available at https://lgcb.dps.louisiana.gov/illegal-operators/ (June 2025: identifying VGW Holdings US, Inc., VGW Games, Ltd., and VGW Malta, Ltd. as "Illegal Operators" issued cease-and-desist letters).

9 *See* Mississippi Gaming Commission, *Mississippi Gaming Commission Issues Cease and Desist Letters to Illegal Online Gaming Operators* (June 17, 2025), available at https://www.msgamingcommission.com/images/uploads/Public_Notice_(June_2025).pdf (stating that "While some games might be advertised as free to play, if there is an opportunity for the player to provide consideration and win something of value, and an element of chance exists in the game outcome, it is gaming under Mississippi law."). The Mississippi Gaming Commission identified VGW platform Chumba Casino as one of the illegal online gambling platforms. *See* https://www.wjtv.com/news/state/mississippi-gaming-commission-issues-warning-for-illegal-gambling-sites/.

10 *See* Maryland Lottery and Gaming Control Agency, *VGW d/b/a Chumba Casino and Luckyland Slots Business in Maryland* (March 12, 2025), available at https://www.mdgaming.com/wp-content/uploads/2025/03/VGW-Cease-and-Desist.pdf ("VGA d/b/a Chumba Casino and Luckyland Slots ("VGW"), is offering and conducting online gaming activities in Maryland without legal authority to do so.").

11 *See* Tom Nightingale, *Sweeps Operator VGW shuts down in Connecticut after order*, SBC Americas (October 3, 2024), available at https://sbcamericas.com/2024/10/03/vgw-shuts-down-in-connecticut/

12 *See* Office of the New York State Attorney General, *Attorney General James Stops Illegal Online Sweepstakes Casinos* (June 6, 2025), available at https://ag.ny.gov/press-release/2025/attorney-general-james-stops-illegal-online-sweepstakes-casinos (identifying Luckyland, Global Poker, and Chumba as operators offering online sweepstakes platforms offering "prohibited gambling activity in the state").

## III. VGW Offers a Repacked Form of Illegal Gambling

### A. VGW's Two-Coin System Satisfies All Elements of Gambling

45. VGW replicates the system once popular in Internet cafés, which regulators and courts have repeatedly found to constitute illegal gambling. VGW uses a dual-currency system: "Gold Coins" and "Sweepstakes Coins" ("Sweeps Coins"), both of which are used as entry or wagering chips to enter VGW's casino-style games of chance. VGW sells coin packages that include Gold Coins together with specified amounts of Sweeps Coins, and players use these coins to place wagers on slots, roulette, and other games of chance.

46. Gold Coins function as play-money. VGW represents that winnings from Gold Coin play "cannot be redeemed for prizes" and that Gold Coins have "no prize value."

47. Sweeps Coins function as the cash-redeemable wagering currency. Players use Sweeps Coins to enter games of chance—including slots, roulette, blackjack, and poker—for the opportunity to win additional Sweeps Coins. VGW admits that "all Sweeps Coins you want to redeem have to be already used to participate in our Promotional Play," meaning the player has "used them to enter our Games and … won," and that players may redeem their prize as a "Cash Prize," including by redeeming "your Sweeps Coins winnings to your bank account or Skrill wallet."

48. New users receive a small initial allotment of coins, including Sweeps Coins, through promotional mechanisms such as signup "gifts" and other promotions. Those promotional allotments are limited and are quickly exhausted through play, after which continued play and meaningful participation require obtaining additional coins.

49. Coins are required for gameplay. The outcomes of these games are determined by randomness rather than skill. All games require a "minimum bet" of coins before play can begin. Once a player's Sweeps Coin balance falls below the minimum wager, the player cannot continue playing for cash prizes unless the player obtains additional Sweeps Coins, typically through VGW's paid coin packages.

50. VGW accepts electronic payments from consumers to fund wagering on the Casino Websites, including through credit and debit cards and other payment methods. Federal law prohibits the knowing acceptance of payments in connection with unlawful internet gambling. *See* 31 U.S.C. §§ 5361–5367. VGW's acceptance of such payments further confirms that its Casino Websites operate as unlawful internet gambling platforms rather than lawful promotional sweepstakes.

51. VGW sells coin packages that include specified amounts of Sweeps Coins together with Gold Coins. The number of Sweeps Coins provided increases as the amount paid increases. VGW's pricing structure is tiered to incentivize larger purchases by offering more favorable Sweeps Coin exchange rates at higher purchase tiers. For example, VGW offers packages in which a $5 purchase yields 4 Sweeps Coins, a $20 purchase yields 20 Sweeps Coins, a $50 purchase yields 51 Sweeps Coins, and a $100 purchase yields 102 Sweeps Coins. Because Sweeps Coin winnings can be redeemed for cash prizes, this tiered Sweeps Coin pricing structure encourages players to spend more real money to obtain greater amounts of cash-redeemable wagering currency. As shown below, VGW sells coin packages that include specified amounts of Sweeps Coins, and larger purchases yield bonus Sweeps Coins and more favorable exchange rates.

<u>Global Poker Coin Packages</u>



| | | |
|---|---|---|
| 10,000 Gold Coins | | $2 |
| 25,000 Gold Coins | + 4 FREE Sweeps Coins | $5 |
| 50,000 Gold Coins | + 7 FREE Sweeps Coins<br>+ 4x FREE "Uncommon" Entry to JSNG (SC) | $10 |
| 50,000 Gold Coins | + 9 FREE Sweeps Coins | $10 |
| 100,000 Gold Coins | + 20 FREE Sweeps Coins | $20 |
| 250,000 Gold Coins | + 51 FREE Sweeps Coins | $50 |
| 500,000 Gold Coins | + 102 FREE Sweeps Coins | $100 |
| 1,550,000 Gold Coins | + 306 FREE Sweeps Coins | $300 |
| 2,600,000 Gold Coins | + 515 FREE Sweeps Coins | $500 |

LuckyLand Slots Coin Packages




52. Sweepstakes Coins are redeemable on a 1:1 basis for cash prizes. For example, 100 Sweepstakes Coins can be redeemed for $100. VGW represents that players may redeem Sweeps Coin winnings for "Cash Prizes" through withdrawals to a player's bank account or digital Skrill wallet.



53. To redeem Sweeps Coins for cash prizes, VGW requires players to complete an identity-verification process. VGW requires submission of government-issued photo identification and proof of current residential address (such as utility bills, bank statements, or other government documents), and it requires players to verify or link a bank account before cash redemption. VGW thus treats Sweeps Coin redemption as a financial cash transaction requiring "Know Your Customer" verification and bank validation. This verification requirement further confirms that Sweeps Coins function as cash-redeemable wagering currency and that the Casino Websites operate as real-money gambling platforms—not promotional sweepstakes.

54. In an attempt to evade gambling prohibitions, VGW claims that no purchase is necessary to obtain Sweepstakes Coins, asserting they are "free" or a "bonus" added to the purchase of Gold Coins. However, VGW sells paid coin packages that bundle Sweeps Coins together with Gold Coins as a single combined offer and does not offer the two currencies as separate products for purchase. While nominal amounts of Sweeps Coins may be available through promotions, VGW's paid packages are the primary method by which users obtain Sweeps Coins in substantial quantities. As VGW's system is structured, Sweeps Coins are used to wager on games of chance for the opportunity to win additional Sweeps Coins that are redeemable for cash. As a result, VGW's two-coin system allows users to pay real money to obtain cash-redeemable wagering currency, wager that currency on games of chance, and cash out winnings—functioning, in substance and effect, as an online gambling casino.

55. Other facts reveal the Casino Websites to be prohibited gambling casinos. First, VGW markets and presents the Websites as online casinos, not as limited-duration promotions for a separate product or service. The Casino Websites feature casino-style imagery and explicitly incorporate gambling terminology— including "slots" and "poker" in the domain names LuckyLandSlots.com and GlobalPoker.com—reinforcing that the Websites are designed to facilitate casino-style wagering rather than to promote an independent product or service.

56. Second, VGW's purported "sweepstakes" run continuously and indefinitely. Legitimate promotional sweepstakes are limited-duration marketing events designed to promote an independent product, service, or business, and they generally end within weeks or months. VGW's sweepstakes, by contrast, never ends because the gambling itself is the product.

57. Third, VGW's payout structure mirrors casino economics, not promotional sweepstakes. Promotional sweepstakes typically award only a small fraction of revenue in prizes —for example, McDonald's annual Monopoly sweepstakes offers roughly $1 million in prizes from billions in sales—whereas casino games are designed to return a substantial percentage of wagers to players over time while retaining a predictable "house edge." The Return-to-Player ("RTP") rate for games on LuckyLandSlots.com and GlobalPoker.com is approximately 90% to 97%—indistinguishable from commercial casino standards—further demonstrating that VGW's platforms operate as gambling casinos rather than legitimate promotional sweepstakes.

58. Fourth, VGW imposes redemption thresholds that encourage extended gambling rather than prize redemption. For example, players must accumulate at least 50 Sweepstakes Coins before redeeming prizes, which incentivizes continued play, compulsive behavior, and increases the risk of loss.

59. Fifth, the Casino Websites' dual-currency structure confirms that the real object of the transaction is the ability to wager and win cash-redeemable Sweeps Coins—not to obtain non-redeemable Gold Coins. Gold Coins have no prize value, while Sweeps Coins are the currency used for wagering and cash redemption. The goal is to win Sweeps Coins because winning them equates to winning money and other things of value.

60. In short, VGW has modernized the Internet-café sweepstakes playbook that courts and regulators have repeatedly found to constitute illegal gambling. Instead of selling Internet time, phone minutes, or nominal retail goods bundled with "free" sweepstakes entries, VGW sells virtual coin packages that bundle cash-redeemable Sweeps Coins with Gold Coins, thereby disguising the paid acquisition of entry currency for casino-style gambling.

61. Defendant VGW Holdings has acknowledged in public securities filings that its

social casino websites like Luckylandslots.com and Globalpoker.com were modeled after the illegal Internet-café sweepstakes model:

> 67 Over the last 10 years, 'Internet Sweepstakes Cafes' have evolved and proliferated across the US. They operate as internet cafes that offer their customers entrance into a sweepstakes draw upon the purchase of a product, often internet time or telephone call minutes. The participant can find out whether they have won the pre-determined draw by a simple reveal but many choose to do so through a programme that simulates a slot machine or poker game. This may even include an online element, but neither the presentation nor their interaction affects the outcome of the draw.
>
> 68 Increasingly sweepstakes gaming has emerged out of these cafes, with consumer products allowing 'free' entrance into games in which cash prizes can be won in return.

62. Those same VGW filings further describe the lucrative scale of this business, reporting that "Internet sweepstakes Cafes are reported to have turned over $10bn (€9.4bn) in 2015, with over 5,000 now operating in 12 states" (*id.* at 69), and identifying the "significant opportunity" in adopting the "sweepstakes café model." *Id.* at 95-96. By 2021, VGW's revenues reportedly exceeded $2.2 billion.[13]

63. The parallels between VGW's Casino Websites and the Internet-café business model are clear:

- ✓ Both sell a nominal "product" bundled with a commensurate number of sweepstakes entries or entry currency to play real money casino-style games of chance in a casino-like setting.
- ✓ Both operate sweepstakes games perpetually rather than as limited-duration promotions.
- ✓ Both offer prize-redemption mechanisms and payout structures designed to resemble casino economics rather than typical sweepstakes promotions with low payout ratios.
- ✓ Both purport to offer a "no-purchase-necessary" mail-in option that in practice, provide only nominal participation compared to paid play.

---

13 Charlie Gunningham, *VGW Revenue Up to $2.2B*, Startup News (Oct. 24, 2021), https://startupnews.com.au/news/vgw-revenue-up-to-2-2b/.

64. VGW does not offer LuckyLand Slots or Global Poker free-play tokens through retail stores or other physical locations in Oregon.

65. Nor does VGW run the purported sweepstakes for any fixed promotional period to promote a separate good or service. Instead, LuckyLandSlots.com and GlobalPoker.com operate continuously and exist solely to generate revenue from casino-style gambling.

**B. <u>VGW Promotes Gambling To Underage Minors</u>**

66. The National Institutes of Health reports that "despite its illegality among adolescents, online gambling is a common practice, which puts their mental health and well-being at serious risk." J. Behav. Addict., 2021 Sept. 16;10(3):566-586. Research shows a "greater addictive potential of online gambling over traditional gambling, especially for young problem gamblers." This heightened risk is due to the developmental characteristics of adolescence, where individuals are more likely to engage in risky behaviors and develop addiction problems due to immature self-regulation capacity, impulsivity, external locus of control, and susceptibility to contextual factors. *Id*.

67. The same research warns that adolescents are especially susceptible to the stimuli commonly used in online gambling: "lured by the pop-up gambling advertisements, offers of gifts and free play, tempting easy win messages, thrill of many online games, and visually exciting graphics and photos presented with the games." *Id.* These design features, all of which are prominently displayed on the Casino Websites, are deliberately engineered to attract and retain young players.

68. The younger the age of online gambling onset, the higher the probability of developing problem gambling and the more severe the psychosocial consequences are. Early exposure is a significant predictor of lifelong gambling addiction.

69. According to a 2024 University of Michigan national poll on children's health, nearly one-third of U.S. parents say that they or another adult in their household have gambled. Among those households, two-thirds reported that their teen had a bank account or credit card in

their own name. One in six parents admitted they would not know if their own child was gambling online.

70. VGW exploits this vulnerability for profit. By marketing casino-style games with bright, animated graphics, "free play" offers, and prize-redemption incentives that mimic real-money gambling, VGW ensures that minors can easily access and engage with its Casino Websites. VGW's failure to implement any meaningful age-verification or geolocation safeguards further facilitates underage gambling and amplifies the resulting harm.

**C. VGW Misleads The Public With False Claims Of Legality**

71. VGW engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing consumers to believe that participation on the Casino Websites is legal and permitted in Oregon.

72. On the LuckyLand Slots website, VGW tells users:

> Our games are fully accessible to players across the United States, with the exception of Connecticut, Delaware, Michigan, Montana, Nevada and Washington. We operate under the highest integrity and compliance with all applicable laws and regulations, ensuring we provide you with a safe, secure and enjoyable social casino experience every time you log in.[14]

73. Likewise, on the Global Poker website, VGW states that it accepts customers who "reside in the United States (excluding the states of Connecticut, Delaware, Michigan, Montana, Nevada, or Washington)."[15] Global Poker also requires users at registration to identify their state of residence.

74. VGW does not include Oregon as an excluded territory, even though online casino gambling is not authorized by Oregon law and is unlawful unless specifically authorized by the Legislature.

---

[14] *See* LuckyLand Slots, *The LuckyLand Slots Difference!*, available at https://luckylandslots.com/prizes (last visited Dec. 29, 2025).

[15] *See* Global Poker, *Customer Acceptance Policy*, available at https://globalpoker.com/customer-acceptance-policy (last visited Dec. 29, 2025).

75. Further, VGW states that if the user is in an excluded territory, the user will not be able to access or even use the platform, create an account, play the games, or interact with VGW in any other way. Yet VGW allows Oregon residents to access, register, and play the games of chance on the Casino Websites in Oregon.

76. By affirmatively excluding some states while omitting Oregon, VGW creates the false impression that Oregon is a jurisdiction in which its gambling Websites are lawful and permitted. This omission, combined with VGW's marketing and unrestricted access, misleads reasonable consumers into believing the Websites are legal, approved, or regulated by the State of Oregon.

77. VGW further reinforces this false impression of legality by requiring players to verify their identity and residence and to verify or link a bank account before redeeming Sweeps Coin winnings for cash prizes. These compliance-style verification requirements mirror the processes used by regulated real-money gambling and financial platforms and signal to consumers that VGW's casino operations are lawful and properly authorized.

78. On the Global Poker website, VGW expressly represents that Global Poker is "legal." In the Website's Help Center, VGW posts the following question and answer: "Is Global Poker legal?" "Yes. Global Poker is a social poker site that offers its players a thrilling poker experience. Ring games, tournaments, and other poker and casino-style social games are available to players residing in the United States (*excluding outlying Territories and the State of Connecticut, Delaware, Michigan, Montana, Nevada and Washington*) and Canada (*excluding Quebec*)."[16]

79. VGW makes the same representation on the LuckyLand Slots website. In the Website's Help Center, VGW posts the following question and answer: "Is LuckyLand Slots legal?" "Yes, LuckyLand Slots is a social casino site that offers its players a thrilling social gameplay experience. Casino-style social games are available to players residing in the United

16 *See* https://help.globalpoker.com/article/Is-Global-Poker-legal (last visited Jan. 7, 2026).

States (excluding outlying Territories and the States of Connecticut, Delaware, Michigan, Montana, Nevada, and Washington).”[17]

80. VGW’s deception is material. Oregon residents, including Plaintiffs, would not have gambled on VGW’s Casino Websites had they known the truth—that VGW’s online casino operations are illegal in Oregon.

## IV. No Valid or Enforceable Contract Exists Between the Parties, Including the Arbitration Agreement and Its Delegation Clause

81. Plaintiffs and Class members did not enter any valid or enforceable contract with VGW. The purported Terms and Conditions were presented solely as a condition of participating in VGW’s unlawful gambling scheme—paying real money to obtain Sweeps Coins, wagering them on games of chance, and redeeming winnings for cash prizes.

82. Because gambling contracts are illegal and void under Oregon law, no valid agreement was formed between Plaintiffs and VGW. A contract founded upon illegal consideration will not be enforced. Any purported Terms and Conditions, including any arbitration clause, class-action waiver, or delegation clause, are therefore void and without legal effect.

83. VGW cannot enforce a contract clause—including arbitration—while simultaneously relying on the same contract as the vehicle for illegal gambling transactions prohibited by Oregon law.

84. Alternatively, the Terms and Conditions are unconscionable. They are adhesive, presented on a take-it-or-leave-it basis, with no opportunity for negotiation, and users cannot access the Casino Websites without purportedly agreeing to them. The Terms and Conditions are not negotiated, and consumers have no meaningful choice.

85. The arbitration clause is also substantively unconscionable. It is buried in uniform text, not highlighted or separately acknowledged, and is designed to deter claims by imposing unfair restrictions—limiting damages, denying participation in arbitrator selection, prohibiting

[17] *See* https://help.luckylandslots.com/article/LLS-Is-LuckyLand-Slots-legal (last visited Jan. 7, 2026).

class actions, and requiring individualized proceedings whose costs would exceed the value of any individual claim.

86. The practical effect of the arbitration and class-action waiver provisions is to insulate VGW from accountability for its unlawful conduct by chilling claims and eliminating effective enforcement of Oregon consumer-protection and gambling laws.

87. In sum, Plaintiffs and Class members paid to forgo the ability to protect their statutory and constitutional rights, while VGW gains immunity at no cost. Plaintiffs and Class members were not given a *quid pro quo* for agreeing to arbitrate and forgoing their constitutional right to a trial by jury.

88. The Terms and Conditions are additionally illusory. They purport to allow VGW to modify the contract at any time, without meaningful notice or consent, including modifying the arbitration provisions. VGW's unilateral power to change the terms renders any supposed agreement lacking mutuality, unsupported by valid consideration, and unenforceable.

89. Plaintiffs and Class Members were additionally misled and induced to accept the Terms and Conditions by VGW's false representations and omissions that participation on the Casino Websites is legal in Oregon. Had VGW disclosed the truth—that the Casino Websites operate as unlawful gambling—Plaintiffs and Class members would not have assented to any terms, including any arbitration clause or delegation provision.

## CLASS ACTION ALLEGATIONS

90. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

91. Plaintiffs seek to represent the following Class ("Class") defined as:

> All persons who, while located in Oregon, paid money or other things of value to participate on www.Luckylandslots.com or www.Globalpoker.com

92. Excluded from the Class are VGW and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their

immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

93. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

94. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. While Plaintiffs are informed and believe that there are hundreds to thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from VGW's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

95. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether VGW engaged in the conduct alleged herein;

b. Whether VGW's alleged conduct violates applicable law;

c. Whether the Casino Websites are illegal gambling in Oregon;

d. Whether Plaintiffs and Class members wagered and lost money or other things value on the Casino Websites in Oregon;

e. The amount of money or other things of value wagered and lost by Plaintiffs and Class members in Oregon;

f. whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

g. the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

96. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the Class members wagered and lost money or other things of value on the Casino Websites in Oregon. Also, neither Plaintiffs nor the other Class members would have participated on Luckylandslots.com and Globalpoker.com had VGW not engage in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which VGW engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

97. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class that they seek to represent, Plaintiffs retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

98. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** VGW has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

99. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the Class members to individually seek redress. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense

to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

100. **Ascertainability –** VGW maintains a robust database with all its participants. Each participant must create an account to participate and must select and verify which state they are from. VGW also assigns each participant's account an individually identifiable number, and VGW tracks winning and losses, because it controls how much a player can wager and cashout a day.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Declaratory Judgment
### (28 U.S.C. §§ 2201 *et seq*.)

101. Plaintiffs repeat and reallege all other paragraphs as if fully set forth herein.

102. Plaintiffs bring this count individually and on behalf of all other Class members.

103. Oregon law strictly regulates and prohibits most forms of gambling.

104. Under Oregon law, unless the legislature specifically authorizes it, gambling is unlawful. *See* ORS 167.117(24) ("unlawful" means "not specifically authorized by law").

105. Under Oregon law, "gambling" occurs when "a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under the control or influence of the person, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." ORS 167.117(7).

106. A game is one of chance—not skill—when chance predominates in determining the outcome.

107. VGW operates online casinos at www.Luckylandslots.com and www.Globalpoker.com (the "Casino Websites") that require participants pay consideration for the chance to win a prize.

108. The "Chance Games" offered by VGW on its Casino Websites are predominantly games of chance and do not involve any level of skill.

109. The cash prizes VGW offers are valuable.

110. VGW's operations constitute illegal gambling rather than a legitimate sweepstakes. In Oregon, a gambling scheme remains unlawful even if the player is guaranteed something of nominal value or if free plays are available. *State v. Langan*, 293 Or. 654, 657 (1982) (holding that a device is not excluded from the definition of illegal gambling "merely by virtue of the fact that they return free additional games or plays."). In fact, even paying back up to 98% of all money played is illegal gambling (where the typical sweepstakes payout is 50%). VGW's so-called "free" play is limited, awards no redeemable prizes, and serves only to induce paid gambling. Moreover, VGW does not promote or market any separate good or service, it *is* the good or service.

111. Plaintiffs and Class members each paid money or other things of value to VGW to play the Chance Games for the sole purpose of winning a prize of monetary value.

112. VGW also violates the Unlawful Internet Gambling Enforcement Act by accepting credit cards for gambling. *See* 31 U.S.C. §§ 5361-5367.

113. An actual and justiciable controversy exists between the parties regarding the legality of VGW's gambling operation. Plaintiffs and Class members seek an order declaring that (1) VGW's operation of the Casino Websites constitutes illegal gambling under Oregon law; and (2) any authority under which VGW purports to operate is invalid or unconstitutional.

114. Plaintiffs and the Class further seek a permanent injunction enjoining VGW from offering or operating the Casino Websites in Oregon, and an order requiring disgorgement of all profits derived from Oregon consumers.

115. Pursuant to Fed. R. Civ. P. 57, Plaintiffs and Class members also seek a speedy declaratory-judgment hearing to resolve these questions of law and prevent continuing harm.

## <u>SECOND CAUSE OF ACTION</u>

**Oregon Gambling Loss Recovery Statute**
**(Oregon Rev. Stat. § 30.740, *et seq.*)**

116. Plaintiffs repeat and reallege all other paragraphs as if fully set forth herein.

117. Plaintiffs bring this count individually and on behalf of all other Class members.

118. Plaintiffs and Class Members are Oregon residents who have paid and lost money or other things of value to VGW on the Casino Websites (www.Luckylandslots.com and www.Globalpoker.com), or are the spouses, children, or next of kin of Oregon residents who have done so.

119. Oregon law prohibits gambling that is not specifically authorized by law. ORS 167.117(7)–(9), 167.122, 167.127, 167.147, 167.164.

120. A person "commits the crime of unlawful gambling in the first degree if the person knowingly promotes or profits from unlawful gambling." ORS 167.127.

121. Oregon further prohibits the possession or use of gambling devices—including slot machines and electronic devices that simulate casino games—unless expressly authorized by law. ORS 167.117 (8)-(9), 167.164, 167.147.

122. Internet gambling is not authorized by law. ORS 167.117. To the contrary, Oregon makes it a Class C felony to accept credit cards or similar instruments for the purpose of Internet gambling. *See* ORS 167.109.

123. VGW owns, controls, operates, manages, supervises, or directs an Internet website—the Casino Websites (www.Luckylandslots.com and www.Globalpoker.com)–at which unlawful wagers may be placed, received, or otherwise made. 31 U.S.C. § 5367.

124. VGW is the proprietor who owns and operates an illegal Internet gambling enterprise through the Casino Websites that are accessible in Oregon, which offers chance-based casino-style games in exchange for money or things of value, from which VGW profits.

125. ORS 30.740 provides a losing gambler with a first-party cause of action to recover twice the amount of any losses suffered. Under ORS 30.740:

> All persons losing money or anything of value at or on any unlawful game described in ORS 167.117, 167.122 and 167.127 shall have a cause of action to recover from the dealer winning the same, or proprietor for whose benefit such game was played or dealt, or such money or thing of value won, twice the amount of the money or double the value of the thing so lost.

126. VGW is the proprietor for whose benefit the unlawful games on the Casino Websites were played.

127. Plaintiffs and other Class members each paid and lost money or other things of value to VGW on those unlawful games at the Casino Websites.

128. Accordingly, Plaintiffs and other Class members are entitled to recovery of twice the amount of money of their losses, together with pre- and post-judgment interest.

129. Plaintiffs also bring this claim on behalf of the spouses, children, and next of kin of Oregon residents who paid and lost money or things of value to VGW.

## THIRD CAUSE OF ACTION

### Violations of the Unlawful Trade Practices Act (Oregon Revised Statutes § 646.605, *et seq.*)

130. Plaintiffs repeat and reallege all other paragraphs as if fully set forth herein.

131. Plaintiffs bring this count individually and on behalf of all other Class members pursuant to ORS 646.638.

132. The Oregon Unlawful Trade Practices Act (UTPA) prohibits unlawful practices in the course of a person's business, including "unfair or deceptive conduct in trade or commerce." ORS 646.608(1)(u).

133. VGW, Plaintiffs, and Class members are "persons" within the meaning of ORS 646.605(4).

134. VGW offered "goods or services" within the meaning of ORS 646.605(6)(a).

135. VGW is engaged in "trade" or "commerce" within the meaning of ORS 646.605(8).

136. The UTPA provides a non-exhaustive list of unlawful, unfair or deceptive conduct, including but not limited to:

a. Causing "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of [] goods or services." ORS 646.608(1)(b);

b. Causing "likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another." ORS 646.608(1)(c);

c. Representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the [] goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have." ORS 646.608(1)(e);

d. Representing that "goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the [] goods or services are of another." ORS 646.608(1)(g);

e. Advertising "goods or services with intent not to provide the [] goods or services as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." ORS 646.608(1)(i); and

f. Making "any false or misleading statement about a prize, contest or promotion used to publicize a product, business or service." ORS 646.608(1)(p).

137. The UTPA also prohibits conduct that "[v]iolates ORS 646A.803," ORS 646.608(1)(uu). ORS 646A.803(3)(a) specifically forbids a person from soliciting "participation in a sweepstakes and does not clearly and conspicuously disclose in the solicitation . . . [t]he odds of winning in Arabic numerals."

138. As alleged herein, VGW violated the UTPA by engaging in unfair, and deceptive trade practices, including by:

a. Operating an online gambling enterprise disguised as a "sweepstakes" and soliciting participation without clearly or conspicuously disclosing the odds of winning, instead using vague "volatility" labels without numeric value;

b. Reserving the right to alter odds at any time, rendering any purported disclosure meaningless;

c. Misrepresenting or causing confusion and misunderstanding that gambling on the Casino Websites is legal and approved or certified by the State of Oregon;

d. Representing that its goods or services are lawful, approved, or of a particular standard or quality when, in fact, Internet gambling is illegal in Oregon; and

e. Omitting material information necessary to dispel the misleading impression that participation on the Casino Websites was lawful.

139. Other unconscionable, false, misleading, or deceptive acts or business practices employed by VGW include:

a. deceiving or confusing customers into believing that their gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are void and prohibited by Oregon law; and

b. representing that the Casino Websites' users will receive an economic benefit (in the form of gambling winnings), when that benefit is contingent on a chance event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

140. To the extent required by law, VGW owed a duty to disclose to Plaintiffs and the Class that participation on its Casino Websites is illegal in order to dispel misleading impressions it created that participation on its Casino Websites was legal.

141. VGW's unfair or deceptive acts or practices were material, were likely to deceive reasonable consumers, and did in fact deceive Plaintiffs and Class members, causing them to pay money or other things of value to VGW.

142. VGW acted knowingly and willfully, with intent to mislead consumers about the nature and legality of its gambling Websites.

143. VGW's violations present a continuing risk of harm to Plaintiffs and the Class members, as well as to the general public. VGW's unlawful acts and practices complained of herein affect the public interest.

144. Plaintiffs and Class members suffered ascertainable losses and actual damages as a direct result of VGW's conduct. Plaintiffs and other Class members would not have participated or lost money or property on the Casino Websites had VGW disclosed the true nature of the Casino Websites.

145. Pursuant to ORS 646.605, 646.638, and 646.656, Plaintiffs and the Class members seek an order enjoining VGW's unfair and deceptive acts or practices and awarding actual or statutory damages, whichever is greater, punitive damages, restitution, reasonable attorneys' fees and costs, and any other relief that the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in their favor and against VGW, as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B. Declaring that the Casino Websites constitute illegal gambling under Oregon law and that any authority under which they purport to operate is unconstitutional and void;

C. Enter a permanent injunction permanently enjoining VGW from operating the Casino Websites or any similar Internet gambling enterprise in Oregon;

D. Ordering VGW to refund all money or things of value lost by Plaintiffs and the Class and pay actual and statutory damages (including punitive damages) and restitution and disgorgement of profits to Plaintiffs and the Class, as allowable by law;

E. Ordering VGW to pay both pre- and post-judgment interest on any amount awarded;

F. Ordering VGW to pay Plaintiffs' attorneys' fees and costs of suit; and

G. Ordering such other and further relief as the Court may deem just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 20, 2026

**JOHNSON JOHNSON LUCAS & MIDDLETON**

*s/ Marilyn Heiken*

Marilyn A. Heiken, OSB #923308
mheiken@justicelawyers.com
975 Oak Street, Suite 1050
Eugene, OR 97401
Telephone: (541) 484-2434
Facsimile: (541) 484-0882

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
W. Daniel "Dee" Miles, III*
dee.miles@beasleyallen.com
James Mitchell "Mitch" Williams*
mitch.williams@beasleyallen.com
Dylan T. Martin*
dylan.martin@beasleyallen.com
Trenton H. Mann*
trent.mann@beasleyallen.com
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
Tel: 334/269-2343
334/954-7555 (fax)

**BLOOD HURST & O'REARDON, LLP**
Timothy G. Blood*
tblood@bholaw.com
Thomas J. O'Reardon II*
toreardon@bholaw.com
James M. Davis*
jdavis@bholaw.com
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)

**SMITH KRIVOSHEY, PC**
Joel D. Smith*
joel@skclassactions.com
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Tel: 617/377-4704

888/410-0415 (fax)

**Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Class*