IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BETHANY ANDERSON and CHRIS DAVIS, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

VGW HOLDINGS US, INC., VGW US, INC., VGW LUCKYLAND, INC., VGW GP LTD., VGW HOLDINGS PTY LTD. f/k/a VGW HOLDINGS LTD., and VGW GAMES LTD.,

Defendants.

Case No. 6:26-cv-00109-AP

**FINDINGS & RECOMMENDATION**

POTTER, United States Magistrate Judge:

Plaintiffs Bethany Anderson and Chris Davis filed this class action complaint against Defendants VGW Holdings US, Inc., VGW US, Inc., VGW Luckyland, Inc., VGW GP Ltd., VGW Holdings Pty Ltd. f/k/a VGW Holdings Ltd., and VGW Games, Ltd. (collectively VGW or Defendants), seeking damages and declaratory relief for alleged violations of Oregon gambling laws. Defendants move to compel arbitration of Plaintiffs' claims based on an arbitration agreement to which both Plaintiffs allegedly agreed to be bound. Defs.' Mot. to Compel Arbitration ("Defs.' Mot."), ECF No. 24. For the reasons discussed below, Defendants' Motion to Compel Arbitration should be GRANTED.

## BACKGROUND

### I. The Complaint

Plaintiff Bethany Anderson is an Oregon resident who wagered and lost money on "VGW's online casino-style games of chance on Luckylandslots.com." Compl. ¶ 7, ECF No. 1. Plaintiff Chris Davis, also an Oregon resident, wagered and lost money on VGW's online casino-style games on globalpoker.com. *Id.* ¶ 8. Plaintiffs allege that Defendants "Casino Websites constitute an illegal gambling operation under Oregon law." *Id.* at ¶ 5. On the website, users can play casino-style games; users wager money to play and receive prizes such as cash or cash-equivalent gift cards if they win. *Id.*

Plaintiffs bring claims under 28 U.S.C. § 2201, Oregon's Gambling Loss Recovery Statute, ORS 30.740, and Oregon's Unlawful Trade Practices Act, ORS 646.605. *Id.* ¶¶ 90–133. Plaintiffs seek to represent a class, defined as: "All persons who, while located in Oregon, paid money or other things of value to participate on www.luckylandslots.com or www.Globalpoker.com." *Id.* at ¶ 91.

### II. Defendant VGW's Online Platform

Defendants (VGW Group and its affiliates) create casino-style games that can be played online including Luckyland Slots and Global Poker. Declaration of C. Cavallaro in Support of Defendants' Motion to Compel Arbitration ("Cavallaro Decl.") ¶ 2, ECF No. 25. The games are free and are played with tokens called "Gold Coins." *Id.* ¶ 3. But users can also purchase additional Gold Coins; when they do, they receive "Sweeps Coins" as a bonus. *Id.* Users can redeem certain sweepstakes entries for money or prizes. *Id.*

Before anyone can play Luckyland Slots or Global Poker, they must set up an account on the website. *Id.* ¶ 8. This requires the user to accept the hyperlinked terms of service. *Id.* ¶¶ 8–9.

If any of the material terms of service are updated, the user must accept the new terms prior to continuing to play. *Id.* ¶ 10. No user is able to play unless they accept the updated terms. *Id.* Luckyland Slots and Global Poker had virtually identical terms of service which include an arbitration agreement that requires users to arbitrate their disputes with VGW Group unless they opt out. *Id.* ¶ 9. Users are given thirty days to opt out of the arbitration provision. *Id.* Exs. 1, 2. VGW Group maintains records of when accounts are created and the terms are accepted. *Id.* ¶ 11.

## III. Plaintiff Bethany Anderson's Account

Plaintiff Bethany Anderson created an account with Luckyland Slots on December 30, 2021. Cavallaro Decl. ¶ 12. Over time, she accepted updated terms of service. *Id.* Prior to filing this suit, records reflect that on December 30, 2025, Ms. Anderson accepted new voluntary terms (version 26.0) that included an arbitration provision. *Id.* ¶¶ 12, 15. She would have been alerted to those terms by a pop-up window:




And according to the records, she clicked the check box next to "I agree to the updated Terms of Service." *Id.* ¶ 15. The "Terms of Service" included a hyper-link that would take her to the new

terms of service; there was also a hyperlink for the key changes. *Id.* ¶ 14. There is no record of Plaintiff Anderson opting out of arbitration. *Id.* ¶ 17.

## IV. Plaintiff Chris Davis's Account

Plaintiff Chris Davis created a Global Poker account on July 17, 2023. *Id.* ¶ 18. When he created the account, he accepted the terms of service (version 6.2) which included an arbitration provision. *Id.* ¶ 18, Ex. 2. He would have accepted them by clicking a box stating he agreed to the terms and conditions; the terms and conditions were hyperlinked if he wished to review them. *Id.* ¶¶ 20, 21. This was part of the original account registration page:







*Id.* ¶ 19. That was the only terms of service Plaintiff Davis accepted and there is no record he opted out of arbitration. *Id.* ¶ 23.

## V. The Motion to Compel Arbitration

The terms of conditions for Luckyland Slots and Global Poker each contain a materially identical arbitration provision that provides as follows:

> We Both Agree To Arbitrate. By agreeing to these Terms of Service, and to the extent permitted by applicable law, you and VGW Group each and both agree to resolve any Disputes – including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate – through final and binding arbitration as discussed herein.

Cavallaro Decl., Ex. 1 § 24.2, Ex. 2 § 23.5 (materially identical).

"VGW Group" is defined in the terms to include VGW Games, VGW GP, VGW Luckyland, VGW Holdings US, and "our affiliates and related parties," which include VGW US and VGW. *Id.*, Ex. 1 § 1; Ex. 2 § 1. "Disputes" is defined as "all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms of Service, the Platform and Games, the formation of these Terms. . . or any other dispute between you and VGW Group . . . , whether arising prior to or after your agreement to this clause." *Id.*, Ex. 1 § 24; Ex. 2 § 23 (materially identical). The arbitration agreement states that it shall "be construed under and be subject to the [FAA]." *Id.*, Ex. 1 § 24; Ex. 2 § 23. And arbitration will be "on an individual basis" *Id.*, Ex. 1 § 24.4; Ex. 2 § 23.9. Luckyland's arbitration is subject to JAMS while Global Poker's arbitration is subject to AAA. *Id.*, Ex. 1 § 24.4; Ex. 2 § 23.7.

Based on the arbitration provision, Defendants seek to compel each Plaintiff to arbitrate their claims individually. Defs.' Mot. 1. Plaintiffs oppose, arguing that no enforceable agreement to arbitrate was created because the terms were an illusory agreement without consideration. Plaintiffs' Opposition to Motion to Compel Arbitration 1. Plaintiffs also argue that Defendants

failed to offer sufficient proof that Plaintiff Anderson agreed to an arbitration agreement. *Id.* at 1–2.

**STANDARDS**

The Federal Arbitration Act (FAA) "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). The FAA codifies the intent that private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To that end, the question of whether parties agreed to refer a particular dispute to arbitration, is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 830–32 (9th Cir. 2022) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up)). Once satisfied that a valid agreement exists, courts must "'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (emphasis in original). Thus, when considering a motion to compel arbitration, the court is limited to determining (1) whether a valid arbitration agreement exists, and if so, (2) whether the arbitration agreement encompasses the dispute at issue. *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir.2008)). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). Finally, when faced with questions regarding the

"scope of arbitrable issues" within an agreement, courts should resolve such questions "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Courts apply the summary judgment standard on a motion to compel arbitration because an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); Fed. R. Civ. P. 56. The party seeking to avoid arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

## DISCUSSION

### I. There Was an Agreement to Arbitrate

As an initial matter, arbitration is "fundamentally 'a matter of contract,' and accordingly, 'a matter of consent.'" *Godon v. Bend-CDJR, LLC*, 348 Or. App. 61, 64 (2026) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–48 (2024)). "When the parties dispute the formation of an agreement, the court, and not an arbitrator, must decide that threshold question." *Id.* (citing *Cornelio v. Premere Rehab, LLC*, 342 Or. App. 399, 404–05 (2025), *review denied*, 374 Or. 616 (2025); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (stating that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"). But "in the presence of an otherwise-valid arbitration provision, a challenge that 'the [entire] agreement was fraudulently induced' or 'that the illegality of one of the contract's provisions renders the whole contract invalid' must be sent to the arbitrator." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)).

The initial question for the Court is whether the parties agreed to the Terms which contained an arbitration agreement.

With respect to Plaintiff Davis, it appears undisputed that the answer is yes. Plaintiff Davis agreed to the Terms when he created his Global Poker account. Cavallaro Decl. ¶¶ 8–9, 18. And those Terms contained an arbitration agreement. *Id.* ¶ 18, Ex. 2.

With respect to Plaintiff Anderson, VGW has established that Plaintiff Anderson agreed to the updated terms on December 30, 2025. *Id.* ¶¶ 12, 15. And those December Terms contained an arbitration agreement. *Id.* Plaintiff Anderson does not appear to dispute those facts. But Plaintiff Anderson contends that is insufficient to show that she agreed to arbitration.

To the extent that Plaintiff Anderson's objection is based on the fact that VGW did not provide the original Terms that Plaintiff agreed to in December 2021 in their initial motion, that argument fails. As made clear in the supplemental declaration, Plaintiff Anderson agreed to the December 2021 Terms and those claims also contained an arbitration agreement. Supplemental Declaration of C. Cavallaro ¶ 5, ECF No. 29-1; Luckyland Slots Terms of Service, §§ 22.5, 22.7, ECF No. 29-3. Moreover, VGW established—and Plaintiff Anderson again does not appear to dispute—that she not only had to accept those Terms to register an account but also that she repeatedly accepted the updated Terms to continue to use the Luckyland site. That is sufficient to support a finding that Plaintiff Anderson agreement to the arbitration provisions.

## II. The Contract is Not Illusory

Despite agreeing to an arbitration provision when they agreed to the Terms, Plaintiffs contend that no arbitration agreement was formed because VGW was unilaterally able to amend those Terms. This, according to Plaintiffs, renders the agreement illusory. The Court disagrees.

Under Oregon law, a contract must be based on consideration. *Godon,* 348 Or. App. at 66. "'An exchange of promises is consideration that will support a contract.'" *Id.* (quoting *Shea v. Begley,* 94 Or. App. 554, 558 (1988)). Thus, a mutual promise to arbitrate "is adequate consideration to enforce [an] agreement." *Wilson v. Bristol-Myers Squibb Co.*, No. 3:17-CV-2054-SI, 2018 WL 2187443, at *4 (D. Or. May 11, 2018) (citation modified); *see also Peach v. VGW Holdings, Inc.*, No. 4:25-CV-00849-KGB, 2026 WL 3084645, at *14 (E.D. Ark. Sept. 30, 2026) ("The promise to mutually arbitrate disputes between the parties is sufficient consideration for the formation of the arbitration clause."). Here, the terms specify that both the company and the customer agree to resolve all disputes, claims, or controversies through arbitration. Both parties are bound by the agreement to arbitrate their claims, which satisfies Oregon's consideration requirements. *Wilson,* 2018 WL 2187443, at *4.

However, when one party "has unlimited discretion to avoid its obligations, that party's promise is illusory." *Godon*, 348 Or. App. at 66. In Oregon, "illusoriness is a formation issue that is reserved for the court." *Id.* at 67. But a contract provision allowing a party to "modify terms unilaterally does not render the contract unenforceable." *Associated Oregon Veterans v. Dep't. of Veterans' Affs.*, 300 Or. 441, 448 (1985). When allowed by the contract, "unilateral changes are permissible" provided that any such modifications are made "in good faith and be based on fair dealing." *Nat'l Mgmt Servs, Inc. v. Qwest Dex, Inc.*, No. 01-CV-1772-HU, 2002 WL 35649667, at *5 (D. Or. Dec. 16, 2002); *see also Crites-Bachert v. Providence Health & Servs. - Oregon*, No. 24-6664, 2025 WL 3141932, at *2 (9th Cir. Nov. 10, 2025) (noting that Oregon law allows "unilateral changes" when the contract allows them).

Here, both the Luckyland and Global Park Terms contain the following Amendment provisions:

> 25.2, VGW Group hereby reserves the right to amend these Terms and Conditions, or to implement or amend any procedures, at any time. Any amendments will be published on the Platforms and such changes will be binding and effective immediately.
>
> 25.3. Whenever we amend these Terms and Conditions in a way that would limit your current rights or which may be to your detriment, we will notify you upon your next visit to the Platform(s) and you will be required to re-confirm your acceptance prior to playing any Games. If you do not agree to the amended Terms and Conditions, you must stop using the Platforms.

Cavallaro Decl., Ex.1 §§ 25.2, 25.3. Both Terms also contain the following:

> Whenever we amend these Terms of Service in a way that would limit your current rights or which may be to your detriment, we will notify you upon your next visit to the Platform and you will be required to re-confirm your acceptance prior to playing any Games. If you do not agree to the amended Terms of Service, you must stop using the Platform.

*Id.* § 25.3; Cavallaro Decl., Ex. 2 § 24.3.

So, while VGW did retain the right to amend the Terms, it was also required to notify users, and all users were required to agree to the amended Terms in order to continue to use the website. As such, VGW did not retain the unilateral right to change the Terms. Any change required mutual assent, including notice and an opportunity for users to opt out by declining to use the site or opting out of arbitration. *See Baker v. VGW US Inc.*, No. 4:26-CV-173 (CDL), 2026 WL 1894515, at *4 (M.D. Ga. July 1, 2026) (determining that notice and ability to opt out rendered agreement not illusory).

Thus, if either Plaintiff disagreed with the Terms, they were free to decline to use the website and they also were free to opt out of the arbitration provision within 30 days. Neither Plaintiff has offered any evidence that they did so. Instead, Defendants have offered evidence that Plaintiff Davis accepted the initial Terms and Plaintiff Anderson agreed not only to the initial Terms but also updated Terms. This makes these Terms different than contracts that allow changes without notice and without the ability to opt out. *See Baker*, 2026 WL 1894515, at *3-4

(distinguishing the Luckyland Slots language from other language that had been rejected as illusory).

Plaintiffs attempt to compare the language in the Terms to language that other courts have found illusory is unavailing. This is not, for example, a clause that requires notice merely as "required by law" and contains no language allowing the party to reject the changes. *See Johnson v. Cont'l Fin. Co.*, LLC, 131 F.4th 169, 180-81 (4th Cir. 2025) (finding arbitration agreement was illusory because the contract allowed the defendant to unilaterally avoid all of its contractual obligations without notice). Nor is it an agreement that allowing a retroactive change "at any time," "with or without notice," and which provides updates through a pop-up. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 87 (1st Cir. 2018) (finding that defendant's agreement allowed retroactive amendment including ability to remove arbitration rights even from those who attempted to invoke it).

While Plaintiffs seizes on VGW's ability to make the changes binding immediately, that ignores the ability of users to accept or reject the changes before they access the website again. This is a critical distinction and renders the agreement not illusory. *Baker*, 2026 WL 1894515, at *4; *see also Peach*, 2026 WL 3084645, at *15 (finding that requirement to affirmatively accept and option to opt out meant arbitration clause not formed because of illusory consideration); *cf. Johnston v. VGW Holdings, Ltd.*, No. 3:25-CV-653-RAH, 2026 WL 699708, at *5 (M.D. Ala. Mar. 12, 2026) (concluding that "ability to change or add terms does not render the delegation clause unenforceable" because it requires notice and consent).

Plaintiffs also rely on the recent decision in *Wolters v. Sweepsteaks Ltd.*, No. 25-CV-3280 (JRT/JFD), 2026 WL 1894240 (D. Minn. July 1, 2026), for the proposition that the arbitration agreement is void because the underlying contract is for an illegal purpose

(gambling). *Id.* at *4–5. This argument, raised in a supplemental notice of authority, is not persuasive. Plaintiffs allege VGW operates illegal gambling websites. Plaintiffs' Notice of Supplemental Authority 3, ECF No. 33. Defendants disagree. Defs.' Mot. 3. Concluding that the contract is void because it is related to an illegal gambling website would require the Court to decide the "heart" of this legal dispute. *Peach*, 2026 WL 3084645, at *14. It goes to the issue of "validity and enforceability" not formation. *See Huynh v. Boom Shakalaka, Inc.*, 814 F. Supp. 3d 1141, 1147 (C.D. Cal. 2026) (rejecting argument that motion to compel arbitration should be denied because contract for illegal gambling was void). This is precisely the type of dispute that the parties agreed to let the arbitrator decide. The claim that the contract involved an illegal operation is simply not sufficient to defeat arbitration. *See Buckeye Check Cashing, Inc.*, 546 U.S. at 446.

## RECOMMENDATION

For the reasons discussed above, the Court recommends that Defendant's Motion to Compel Arbitration be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately

appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 29th day of October, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge